# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| STEVEN J. PETTWAY,<br>     Appellant, | DOCKET NUMBER<br>SF-0752-13-0211-I-1 |
|    v. | |
| UNITED STATES POSTAL SERVICE,<br>     Agency. | DATE: September 30, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Donna D. Pettway</u>, Palmdale, California, for the appellant.

<u>Aaron Goben</u>, Long Beach, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2      The appellant, a preference eligible, was a Part-Time Flexible City Carrier at the Lancaster Post Office, in Lancaster, California. Initial Appeal File (IAF), Tab 16 at 76. He was removed for unacceptable conduct/failure to follow instructions arising from a series of events involving his supervisor that occurred on July 7, 2012. *See id.* at 76-79. The appellant's supervisor decided to monitor his progress after he claimed that his workload would require him to work overtime on a day when management deemed the volume of mail to be "moderately light." *Id.* at 76. In addition to refusing to answer direct questions and arguing with the supervisor, the appellant nearly hit her with his mail truck, unnecessarily sprayed a nonaggressive dog with dog repellant, and took an unauthorized break. *Id.* at 76-79.

¶3      The agency issued a notice of removal (NOR), stating that the appellant would be removed 30 days after receiving the notice unless he filed a timely grievance. *Id.* at 76. The NOR informed the appellant that he had the right to grieve the removal within 14 days under the applicable collective bargaining agreement. *Id.* at 84. The appellant initiated an informal Step A grievance, and his supervisor denied it. *Id.* at 36-44. A decision from the Postmaster denying

his formal Step A grievance soon followed. *Id.* at 30-35. The appellant then pursued a Step B grievance. *Id.* at 5-29. However, the agency's Dispute Resolution Team (DRT), composed of both management and union representatives, reached an impasse and issued a written decision that informed the appellant of his right to take the grievance to arbitration. *Id.* The appellant, who had been placed on administrative leave with pay while he pursued the grievances, was then placed on leave without pay. IAF, Tab 21 at 23, 28-33, 38. The agency later determined that the appellant was a preference eligible and notified him of his right to file a Board appeal. IAF, Tab 16 at 3-4, Tab 21 at 35. He then filed an appeal with the Board. IAF, Tab 1.

¶4 The administrative judge construed the agency's narrative charge as two separate charges:

> (1) The appellant engaged in unacceptable conduct when he (a) charged an unleashed pit-bull dog in a yard, and (b) drove his Postal Service vehicle towards his supervisor; and

> (2) The appellant failed to otherwise follow instructions as set forth in the supporting specification.

*See* IAF, Tab 31 at 8. After a hearing, the administrative judge found that the agency proved the charges by preponderant evidence. IAF, Tab 59, Initial Decision (ID) at 17-20.

¶5 The administrative judge rejected the appellant's allegations that the agency deprived him of his due process rights. ID at 20-25. The appellant had alleged that the agency denied him notice and the right to respond by issuing an NOR rather than a notice of proposed removal to which he could respond. ID at 20. The administrative judge found that the agency gave the appellant notice of the charges and an opportunity to be heard via pretermination grievances. ID at 20-22. Contrary to the appellant's allegations, he further found that the agency did not fail to provide him with the documents upon which his removal was based. ID at 22-23. He also found that the agency gave the appellant timely access to customer complaint letters considered during the grievance process. ID

at 23. He additionally found that any possible bias that the formal Step A grievance official might have harbored against the appellant, or in favor of the supervisor, had been cured when a different agency manager acted as the Step B grievance official. ID at 23-24.

¶6      The administrative judge rejected the appellant's affirmative defenses, which included harmful procedural error and reprisal for equal employment opportunity, grievance, and whistleblower activity. ID at 25-33. He further found that the appellant did not prove that the agency violated his rights under the Veterans Employment Opportunities Act or that it engaged in prohibited personnel practices. ID at 33-34. The administrative judge found that the agency established nexus and upheld the penalty, reweighing the *Douglas* factors because he determined that the deciding official had improperly considered past disciplinary actions that had been expunged. ID at 34-38; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

¶7      On review, the appellant argues that the administrative judge made erroneous findings of fact as to whether he drove his postal vehicle towards the supervisor. Petition for Review (PFR) File, Tab 1 at 5-9. The appellant asserts that the administrative judge's credibility findings were incomplete and that the findings of fact contradicted the weight of the evidence. *Id.* at 5. Regarding the supervisor's testimony, the appellant asserts that the administrative judge did not make demeanor-based credibility findings and instead simply credited her testimony, stating that she was "unwavering" in her account of events and had testified "consistent with her prior, contemporaneous statement." *Id.* (citing ID at 17). For this reason, he asserts, the Board need not defer to the findings of fact that rely upon the supervisor's testimony. PFR File, Tab 1 at 5, 8-9; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002) (when an administrative judge's findings are not based on the observation of witnesses' demeanor, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues); *Faucher v. Department of the Air*

*Force*, [96 M.S.P.R. 203](#), ¶ 8 (2004) (the Board may overturn an administrative judge's demeanor-based credibility determinations when the judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole).

¶8      The appellant cites examples in support of his argument. He asserts that, during a prehearing deposition, the supervisor "repeatedly" contradicted her earlier contemporaneous statement upon which the charge was based. PFR File, Tab 1 at 6-7; *see* IAF, Tab 16 at 78. During the hearing, he asserts, the supervisor testified that the contemporaneous statement, rather than her deposition testimony, was the correct version of events. PFR File, Tab 1 at 6. Even so, she also testified that she was not sure whether the appellant's vehicle was moving when she entered the street, but, once his vehicle was moving, he had swerved in an attempt to intimidate her. *Id.* The appellant argues that the supervisor "lunged" at his vehicle after it was already moving, and he swerved "to avoid hitting her." *Id.* at 6-7. He additionally challenges her testimony that her actions did not violate any postal policy. *Id.* at 7.

¶9      An administrative judge weighs several factors when deciding whether a witness has testified credibly. Here, the administrative judge found the supervisor's hearing testimony to be consistent with her contemporaneous statement, as well as with the testimony of the station's Delivery Supervisor, who reached the scene shortly after the incident and testified regarding the supervisor's emotional state. ID at 16-17; *see Hillen v. Department of the Army*, [35 M.S.P.R. 453](#), 458 (1987) (the administrative judge may consider such factors as the witness's opportunity and capacity to observe the event or act in question and whether her statement is consistent with other evidence). Moreover, we find that the administrative judge's credibility determinations regarding the supervisor and the appellant in fact were based on demeanor evidence. The administrative judge specifically stated that the supervisor "answered questions calmly and directly," whereas the appellant "became increasingly nervous and

evasive while being cross[-examined]." ID at 16, 17. The appellant has not offered any reason for the Board to overturn these demeanor-based findings. *See Haebe*, 288 F.3d at 1301.

¶10    The appellant also fails to acknowledge his noncooperation during the agency's investigation of the incident and the way in which his own account evolved over time. In his contemporaneous statement, he said only that the supervisor "lunged" in front of him, "forcing [him] to swerve to avoid her." IAF, Tab 16 at 126. He did not address her location relative to the street or his vehicle or the point in time when she entered the street. *Id.* During his July 30, 2012 investigative interview, the appellant offered *no* information regarding the incident. In response to the agency's account, he simply stated, "That is untrue. I'm done." *Id.* at 117. During his September 3, 2012 interview with his union representative, he stated that the supervisor was on the opposite side of the street from his vehicle and lunged at his vehicle as he was preparing to turn left (towards her). *Id.* at 49. He testified, however, that the supervisor was walking near the curb on the same side of the street as his vehicle and he was attempting to turn left (away from her) when she "lunged" into the street. *See* Hearing Compact Disc (HCD) II. The administrative judge noted this discrepancy, finding "many of [his] claims illogical and incredible." ID at 16; *see Hillen*, 35 M.S.P.R. at 458 (the administrative judge may consider such factors as any prior inconsistent statement by the witness; a witness's bias; the contradiction of the witness's version of events by other evidence; and the inherent improbability of the witness's version of events).

¶11    In addition to arguing that the appellant's supervisor did not testify credibly, the appellant contends that the Delivery Supervisor who reached the scene soon after the vehicle incident did not testify credibly when she stated that her colleague appeared "shaken and upset" when she arrived. PFR File, Tab 1 at 7-8. The appellant contends that the Delivery Supervisor's hearing testimony contradicted earlier statements and failed to resolve the differences between her

contemporaneous account and her subsequent statement regarding where she was when she first saw the appellant at the scene. *Id.*; *see* IAF, Tab 16 at 43, 144. The appellant asserts that the Delivery Supervisor's location is important because it indicates her arrival time. PFR File, Tab 1 at 7. He suggests that the Delivery Supervisor may have arrived long after the incident and, if so, that the supervisor's emotional state may have been caused by something other than the near mishap. *Id.* at 8. He also argues that the Delivery Supervisor may have been a biased witness because she was promoted to Postmaster following the events upon which his removal was based. *Id.* at 7.

¶12    The administrative judge did not make specific credibility findings regarding the Delivery Supervisor's testimony, but he cited her testimony for the limited purpose of corroborating the appellant's supervisor's testimony. ID at 17; *see Hillen*, 35 M.S.P.R. at 458. Even if the Delivery Supervisor's statements regarding her location were in some respects inconsistent, the fact that a witness gives inconsistent testimony regarding one issue does not mean that her testimony on another issue cannot be credible. *See Seas v. U.S. Postal Service*, 73 M.S.P.R. 422, 430 (1997).

¶13    The appellant also argues that the administrative judge made erroneous findings of fact regarding the incident with the dog. As above, he asserts that the administrative judge should not have credited the supervisor's testimony that the dog was acting submissively and that the appellant failed to follow agency guidelines. PFR File, Tab 1 at 9. He asserts that the supervisor testified that she had not recently read the postal regulation addressing dog safety. *Id.* In crediting the supervisor's testimony, however, the administrative judge cited her familiarity with dogs and her experience in teaching carriers how to interact with these animals. ID at 17. The appellant additionally argues that the supervisor admitted that a carrier's subjective feeling of being unsafe would govern his behavior and that, because he felt unsafe in the situation, he acted aggressively towards the dog. PFR File, Tab 1 at 9. Here, the appellant raises a red herring, as he did not

deny that he directly disobeyed instructions from his supervisor, who also had the opportunity to observe the dog's behavior.[2] The appellant's arguments are thus unavailing. After considering the record and testimony, we find that the administrative judge considered the entire body of evidence, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).

¶14 Finally, the appellant reargues the issue of whether the Postmaster, who issued the decision for his formal Step A grievance, was biased against him or in favor of his supervisor, based on his past dealings with those persons.[3] PFR File, Tab 1 at 9-13. He argues that the Postmaster testified that, based on his past dealings with both the appellant and the supervisor, he found the supervisor to be the more credible witness. *Id.* at 10; *see* HCD I. He also argues that the Postmaster made findings of material fact without conducting an independent investigation. *Id.* at 10; *see* IAF, Tab 16 at 30. However, the Postmaster also testified that his prior experience with the appellant was *not* a factor in his assessment of the grievance. HCD I. He further testified that he did not recall any specific details of his earlier encounters with the appellant and that, in making his decision, he relied only on the investigatory interviews and the supervisor's statement. *Id.*; *see Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012) ("A deciding official's knowledge of an employee's background only raises due process or procedural concerns where that knowledge is a basis for the deciding official's determinations on either the merits of the underlying charge or the penalty to be

---

[2] We note here that the regulation to which the appellant refers specifically states: "Do not antagonize or attempt to pet dogs. Use animal repellent *on attacking animals*." U.S. Postal Service, Handbook M-41: City Delivery Carriers Duties and Responsibilities § 133.5 (2001) (emphasis added).

[3] The appellant did not challenge the administrative judge's other findings with respect to due process. *See* ID at 20-25.

imposed.") (citing *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011)).

¶15    The administrative judge also found that the Step B grievance process cured any potential violation of the appellant's due process rights because the appellant through his representative had been able to further develop the record and argue his case before another agency manager during the Step B grievance process.  ID at 24.  On review, the appellant asserts that the Step B process could not have cured the violation because the DRT was not a fact-finder and that, in any event, the team reached an impasse regarding the merits of his grievance and decided only that the case contained "no interpretive issue under the National Agreement or any supplement thereto which may be of general application."  PFR File, Tab 1 at 12; *see* IAF, Tab 16 at 5.

¶16    Pursuant to the National Agreement, however, the DRT's role *did* include ensuring that the record was complete:

> It is the responsibility of the Step B team to ensure that the facts and contentions of grievances are fully developed and considered . . . . In any case where the Step B team mutually concludes that relevant facts or contentions were not developed adequately in Formal Step A, they have authority to return the grievance to the Formal Step A level for full development of all facts and further consideration at that level . . . .
>
> The written Step B joint report shall state the reasons in detail and shall include a statement of any additional facts and contentions not previously set forth in the record of the grievance as appealed from Formal Step A.

Nat'l Agreement between the Nat'l Ass'n of Letter Carriers & the U.S. Postal Serv. Art. 15.2, Step B (b) & (c) (2011).  During its deliberations, the DRT reviewed an extensive written record.  *See* IAF, Tab 16 at 28-29.  Nothing in the Step B decision suggests that the team members believed that the record had not been fully developed.  Accordingly, the appellant's arguments are unavailing.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your

discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.