## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LAURIE JOLLY, | DOCKET NUMBER |
| Appellant, | AT-0752-15-0013-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY, | DATE: April 15, 2016 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Chuck R. Pardue</u>, Esquire, and <u>Shellana Welch</u>, Esquire, Martinez, Georgia, for the appellant.

<u>Christopher M. Kenny</u>, Esquire, Fort Gordon, Georgia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        The appellant, a GS-13 Health Systems Administrator, had been experiencing difficulties for some time with pay and leave matters, apparently because of a disagreement she had with management as to whether her work schedule required her to work a set tour of duty each day. Initial Appeal File (IAF), Tab 9 at 5. She had filed numerous equal employment opportunity (EEO) complaints over these issues. On May 2, 2014, she went to see the Chief, Medical Expense Performance Reporting System, regarding these matters. During the meeting, the appellant expressed concerns about how her supervisors had been treating her, became visibly upset, and, according to the Chief, made some disturbing comments, including that she worked in a toxic environment with toxic leadership and that she had written to her Congressman, asking "Must more blood [] be shed before changes occur?"[2] She asked the Chief if she recalled the

_____

[2] In that April 7, 2014 letter, the appellant stated that she was being targeted for mistreatment, harassed, and abused and that her life was in danger. She also asked "Is blood shed required to stop the abuse? I hope the answer is 'No!'" IAF, Tab 8 at 35. She attached a newspaper article about the Fort Hood shooting, on which she had typed several sentences urging the Congressman to read her documents and stating, inter alia, that "thoughtless actions (or in-actions) taken by military leaders are often where the deadly tragedies begin" and "let's stop the violence!" *Id.* at 36.

shootings at Camp Lejeune and Fort Hood.[3]  After the appellant left, because the appellant's demeanor caused her concern, the Chief called her own supervisor, relating that the appellant had mentioned that her first- and second-level supervisors needed to be mindful or careful and leave her alone.  At the Chief's supervisor's suggestion, the Chief began to prepare a memorandum for the record. The appellant returned to the Chief's office on May 5, 2014, seeking to explain what she had meant by blood being shed, stating that her family was bleeding because of the issues with her pay.  In the Chief's view, the appellant was not upset this time, but rather serious and very resolved, and, because this made the Chief nervous, she contacted security.  *Id.* at 33-34.

¶3  On June 16, 2014, the agency proposed to remove the appellant for Conduct Unbecoming a Federal Employee–making inflammatory and/or menacing comments reasonably placing fellow employees in fear.  *Id.* at 28.  After the appellant submitted a written response, IAF, Tab 9 at 4-14, the agency issued a decision finding the charge sustained and warranting the appellant's removal, IAF, Tab 8 at 22-23.

¶4  On appeal, the appellant claimed that her words were taken out of context and that she never threatened anyone, but instead was seeking to prevent outbreaks of violence at military installations.  IAF, Tab 1.  She argued that the charge was not properly "classified" and that removal was too severe a penalty, and she requested a hearing.  *Id.*  She later alleged that the agency's action was in retaliation for her protected EEO activity.  Hearing Transcript (HT) at 5.

¶5  In her initial decision, the administrative judge first found that the agency proved the charge of conduct unbecoming a Federal employee.  IAF, Tab 26, Initial Decision (ID) at 5-7.  She found that the appellant's comments about bloodshed and the shootings at two other military installations implied violence towards the two management officials she blamed for her problems at work and

---

[3] The latter event had occurred just a few weeks earlier.

that they were an escalation of her attempts to get the agency to agree with her regarding the work schedule she wanted. ID at 6. The administrative judge further found that the appellant's comments were examples of how a person can resort to violence when they have a concern that is not resolved, that the comments were inflammatory and/or menacing, and that they reasonably placed her fellow employees in fear. ID at 6-7. The administrative judge next found that there was a nexus between the appellant's conduct and the efficiency of the service. ID at 7. In addressing the penalty, the administrative judge found that the deciding official thoroughly considered all of the relevant *Douglas* factors[4] in determining that removal was a reasonable penalty for the misconduct at issue, ID at 8, and, based on her own review of the *Douglas* factors, the administrative judge concluded that the agency-imposed penalty did not exceed the bounds of reasonableness, ID at 9. Finally, regarding the appellant's claim of retaliation for protected EEO activity, the administrative judge found it undisputed that the appellant had filed EEO complaints of which her supervisors were aware, but that there was simply no evidence that the EEO activity had any impact on the agency's decision, and that Title VII is not a shield for an employee's misconduct. ID at 9-10. Accordingly, the administrative judge affirmed the agency's action. ID at 1, 10.

¶6    The appellant has filed a petition for review, Petition for Review (PFR) File, Tab 1, to which the agency has responded in opposition, PFR File, Tab 3, and the appellant has submitted a reply to the agency's response, PFR File, Tab 4.

¶7    On review, the appellant challenges as erroneous the administrative judge's finding that the charge is sustained. PFR File, Tab 1 at 2-4. The appellant first questions the administrative judge's reliance on the testimony of her supervisors that her comments were disturbing since neither was present when she made the

---

[4] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors, both aggravating and mitigating, that are relevant to the penalty determination in adverse action cases.

comments. *Id.* at 3. However, inasmuch as the appellant has not denied making the statements, her supervisors' reactions to them are no less valid simply because they did not hear them firsthand. The appellant's first-line supervisor, the proposing official, testified that, when he learned of the comments, he found them very disturbing, perceiving that they were directed at him and some of his staff. HT at 28-29. The appellant's second-line supervisor, the deciding official, testified that, in her view, the incident involved the safety and security of the facility and the patients for whom she is responsible and that she felt it was appropriate to immediately notify the authorities. HT at 59-60, 67.

¶8     The appellant also argues that the Chief to whom she made the comments testified that she reported them as a precaution, not because she thought they represented an immediate threat. PFR File, Tab 1 at 3. The testimony to which the appellant refers occurred during an EEO hearing. HT at 20. During the Board hearing, however, the Chief testified that she reported the comments to her supervisor and to the police because she did perceive a threat. *Id.* Because the agency did not charge the appellant with making a threat, the referenced discrepancy in the Chief's testimonies is not significant. She consistently described the appellant as upset, crying, visibly shaken, and very nervous during their meeting, HT at 13, and her own reaction as being very rattled, HT at 15, so much so that she called her supervisor and prepared a memorandum for the record, HT at 16. The Chief further testified that she remained concerned when the appellant returned to see her a few days later, that, after she left, the Chief asked a male colleague and her staff to let security know if the appellant again returned, and that she herself contacted security, an action she had never taken in her 25 years. HT at 17.

¶9     The appellant further argues on review that the administrative judge ignored testimony from two individuals who did not believe the appellant was threatening violence by her comments. PFR File, Tab 1 at 3-4. Those two witnesses were the Criminal Investigator from the Police Provost Marshal's Office who determined

that no "communicated threat" had been made, HT at 94, and a colleague of the appellant's who did not perceive her written comments as a threat, but rather as a "normal" response to the "way she was being treated," HT at 84. First, the administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). In any event, the Criminal Investigator's role was to determine whether the appellant had made a threat as defined and prohibited by Federal law, not to decide if there was cause to remove her from her position. And, the appellant's colleague is not in the appellant's supervisory chain, and thus her position on the significance of the appellant's comments is simply an opinion.

¶10    In sum, we agree with the administrative judge that the agency established the conduct unbecoming charge by proving that the appellant committed the acts in support of the broad label, *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010), and therefore she has not shown that the administrative judge erred in sustaining the charge against her.

¶11    The appellant next argues on review that the agency violated her due process rights because the proposing official testified that the deciding official assisted him in writing the proposal notice.[5] PFR File, Tab 1 at 4-5. In fact, what the proposing official testified to was that, although he never saw it, he thought he learned about the appellant's letter to Congressman Barrow from the deciding official. HT at 46-47. Because an employee's due process rights pertain to ex parte information provided to, and known by, the deciding official, *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 7 (2012), the appellant's claim

---

[5] Ordinarily the Board will not consider a claim raised for the first time on review. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). However, because the appellant asserts that this information was not known to her until the hearing, PFR File, Tab 1 at 5, we have considered it.

regarding the proposing official does not support a violation. The appellant further asserts that the deciding official was too involved in the case to render an impartial decision because she was a target of the appellant's comments and knew that she had filed numerous EEO complaints naming her. PFR File, Tab 1 at 5. An employee does have a due process right to have an unbiased decision maker adjudicate her case. *Martinez v. Department of Veterans Affairs*, 119 M.S.P.R. 37, ¶ 6 (2012). However the appellant has failed to assert specific allegations indicating that the agency's choice of the deciding official made the risk of unfairness intolerably high. *See id.*, ¶¶ 7-8 (explaining that a deciding official's awareness of background information concerning the appellant, his concurrence in the desirability to take an adverse action, or his predisposition to impose a severe penalty does not disqualify him from serving as a deciding official on due process grounds); *see also Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012) (finding that it is not required that a deciding official be unfamiliar with the employee, the facts of the case, or the employee's prior conduct).

¶12       Finally, the appellant challenges the administrative judge's finding that removal is a reasonable penalty for the sustained charge. PFR File, Tab 1 at 5-9. In this regard, the appellant first contends that her alleged misconduct was mischaracterized as conduct unbecoming a Federal employee, which carries a penalty of a 1-day suspension to removal for a first offense, whereas it should have been characterized as creating a disturbance resulting in an adverse effect on morale, which carries a penalty from a written reprimand to a 5-day suspension for a first offense, or threatening or attempting to inflict bodily harm without bodily contact, which carries a penalty from a written reprimand to a 14-day suspension for a first offense. *Id.* at 5-6; IAF, Tab 5, Appellant's Exhibit Z at 13-19. It is well established, however, that the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the

agency and may not substitute what it considers to be a more adequate or proper basis. *Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 4 (2006).

¶13    The appellant further argues that, in determining to impose removal, the deciding official failed to consider mitigating factors. PFR File, Tab 1 at 6-9. Where, as here, the Board sustains an agency's charge, it will defer to the agency's penalty determination unless the penalty exceeds the range of allowable punishment specified by statute or regulation, or unless the penalty is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Batten v. U.S. Postal Service*, 101 M.S.P.R. 222, ¶ 9 (quoting *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987)), *aff'd*, 208 F. App'x 868 (Fed. Cir. 2006). That is because the employing agency, and not the Board, has primary discretion in maintaining employee discipline and efficiency. *Balouris v. U.S. Postal Service*, 107 M.S.P.R. 574, ¶ 6 (2008), *aff'd*, No. 2008‑3147, 2009 WL 405827 (Fed. Cir. 2009); *Batten*, 101 M.S.P.R. 222, ¶ 9. The Board will not displace management's responsibility, but instead will ensure that managerial judgment has been exercised properly. *Balouris*, 107 M.S.P.R. 574, ¶ 6; *Batten*, 101 M.S.P.R. 222, ¶ 9. Mitigation of an agency-imposed penalty is appropriate only where the agency failed to weigh the relevant factors or where the agency's judgment clearly exceeded the limits of reasonableness. *Balouris*, 107 M.S.P.R. 574, ¶ 6; *Batten*, 101 M.S.P.R. 222, ¶ 11. The deciding official need not show that he considered all the mitigating factors, and the Board will independently weigh the relevant factors only if the deciding official failed to demonstrate that he considered any specific, relevant mitigating factors before deciding on a penalty. *Balouris*, 107 M.S.P.R. 574, ¶ 6; *Batten*, 101 M.S.P.R. 222, ¶ 11.

¶14    In determining to uphold the proposed penalty of removal, the deciding official weighed the *Douglas* factors, finding that:  the appellant's remarks constituted a serious offense, causing reasonable fear to the Chief and her supervisors; despite the appellant's 22 years of civilian service, her performance

had been unreliable during the rating year; she had lost the confidence of her supervisor and of key leadership; removal is within the range of penalties under the agency's Table of Penalties; the appellant's conduct reflected poorly on the morale of her coworkers; common sense dictates that her menacing comments were not acceptable, especially given the proximity in time to the mass shooting she referenced, and that, due to the sensitive nature of her comments, security was contacted and she was questioned by the Provost Marshal; her comments exemplify her inability to work with others and a lack of respect for authority and the safety and well-being of coworkers and patients, such that there was no reasonable potential for her rehabilitation; and there were no mitigating circumstances sufficient to overcome the seriousness of her misconduct, and no alternative means to deter such misconduct in the future. IAF, Tab 8 at 24-25; HT at 61-63.

¶15     On review, the appellant asserts that the deciding official failed to consider the fact that she had significant service with no prior discipline, that there was tension between her and her supervisor, that she had sought, but been denied, "medical accommodation," that the incident was an isolated one, and that her performance was good or, in the alternative, not a relevant consideration. PFR File, Tab 1 at 6-9. As noted, however, the deciding official did consider the appellant's 22 years of service. IAF, Tab 8 at 24. Although she did not acknowledge the tension that may have existed between the appellant and her supervisors, given that her numerous EEO complaints specifically named them, the deciding official did find that there were no mitigating circumstances sufficient to overcome the seriousness of the appellant's misconduct. *Id.* Further, the record reflects that the agency did not deny, but rather determined to hold in abeyance, the appellant's request for accommodation, pending her return

to work,[6] IAF, Tab 5, Exhibit V at 38, and that, shortly afterwards, the agency proposed her removal. The fact that the appellant's misconduct was an isolated incident does not necessarily support the imposition of a lesser penalty. *See, e.g.*, *Wiley v. U.S. Postal Service*, 102 M.S.P.R. 535, ¶¶ 16-18 (2006), *aff'd*, 218 F. App'x 1001 (Fed. Cir. 2007). And, because the employee's past work record is a factor for consideration in a penalty determination, *Douglas*, 5 M.S.P.R. at 305, it was not inappropriate for the deciding official to mention that the appellant's performance had been unreliable, IAF, Tab 8 at 24, HT at 30, 35-36. In sum, we find that the agency weighed the relevant factors and that its judgment did not exceed the limits of reasonableness. Therefore, its penalty determination is entitled to deference. *Balouris*, 107 M.S.P.R. 574, ¶ 6; *Batten*, 101 M.S.P.R. 222, ¶ 11.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS[7]

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

---

[6] Shortly after the incident in question, the appellant was out of work on sick leave for approximately 6 weeks. HT at 52 (testimony of proposing official).

[7] In the initial decision, the administrative judge provided the appellant with nonmixed‑case appeal rights. ID at 11, 14-15. Because the appellant raised retaliation for protected EEO activity as an affirmative defense, however, this is a mixed-case appeal. *Caros v. Department of Health & Human Services*, 122 M.S.P.R. 231, ¶ 20 (2015). Accordingly, we have provided the proper appeal rights in this Final Order.

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to

representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.