NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER J. AGORANOS,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2014-3209

---

Petition for review of the Merit Systems Protection Board in No. CH-0432-11-0182-B-1, CH-1221-11-0466-B-1.

---

Decided: February 9, 2015

---

PETER J. AGORANOS, Gilberts, IL, pro se.

KARA WESTERCAMP, Commercial Litigation Branch Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH ANNE SPECK, JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

PER CURIAM.

Peter J. Agoranos ("Agoranos") appeals the decision of the Merit System Protection Board ("Board") affirming his removal from the position of Intelligence Research Specialist with the Drug Enforcement Administration ("DEA" or "agency") and denying his Individual Right of Action ("IRA") appeal requesting corrective action under the Whistleblower Protection Act, 5 U.S.C. § 2302(b) (2012) ("WPA"). Because we find that substantial evidence supports the Board's conclusion that the DEA demonstrated by clear and convincing evidence that Agoranos would have been removed even if he had not made a disclosure protected by the WPA, we *affirm*.

I.

A.

Agoranos served as an Intelligence Research Specialist for the DEA's Chicago Field Division from November 4, 2001 until his removal on November 9, 2010. Agoranos began working under the supervision of Group Supervisor Lynette Georgevich. His initial job performance ratings were "acceptable," but by 2003 his evaluation identified a need for performance improvement and coworkers had entered complaints regarding the quality of Agoranos's work product and interpersonal skills. Georgevich consequently issued a written notice on January 27, 2004, informing Agoranos that he needed to improve his work product. In response, Agoranos filed a grievance against Georgevich.

Although Agoranos's interactions with coworkers continued to be strained in 2005, Georgevich again gave Agoranos an acceptable rating for his job performance. In 2006, Agoranos's performance declined once more. After another complaint by Agoranos against Georgevich, Georgevich felt she could no longer effectively manage Agoranos, and the DEA reassigned Agoranos to Field

Intelligence Manager Patrick O'Dea in October 2006. Agoranos's performance continued to wane, meriting a "less than acceptable level" by 2007. Special Agent in Charge Gary Olenkiewicz also "strongly recommended" that Agoranos seek a psychological exam in June 2007. Because of the low performance rating, O'Dea issued a performance expectations memorandum outlining Agoranos's job expectations, but Agoranos failed to meet those expectations due to, *inter alia*, poor writing, inadequate reports, and inaccurate information. O'Dea thus denied Agoranos a within-grade pay increase in 2008 because of his inability to perform at acceptable levels, and gave him an "unacceptable" performance rating on his 2008 evaluation. From July 2007 to June 2009, Agoranos also requested reassignment to vacant Intelligence Research Specialist positions thirty-one times—the DEA rejected all of his requests.

After his 2008 evaluation, the DEA placed Agoranos on a performance improvement plan ("PIP") under the supervision of Group Supervisor Kevin Quinlan. Quinlan met with Agoranos weekly, but Agoranos still failed to consistently correct writing deficiencies, such as reporting inaccuracies, grammar, and formatting. Based on the PIP results, on May 6, 2009, O'Dea recommended that Agoranos be removed from his position as an Intelligence Research Specialist. The DEA issued a notice of proposed removal on January 7, 2010, requesting Agoranos's removal due to his alleged failure to achieve acceptable performance in Critical Element 1 – Technical Competence/Results and Critical Element 2 – Communications. Special Agent James Reed acted as the deciding official in Agoranos's removal.

Agoranos claims to have made a series of disclosures from 2004 through 2007 that are the crux of this appeal. Agoranos asserts that he informed Georgevich in March 2004 that a coworker had solicited $10 from other employees to enter into a pool to guess when another

coworker would have a baby. Agoranos also claims to have informed Georgevich in May 2005 that he overheard a special agent and two task work officers discussing the possibility of using time spent performing surveillance work to also look for vacant lots to build custom homes. Finally, it is undisputed that, in February 2007, Agoranos reported to supervisor Timothy McCormick that he observed DEA employees selling betting squares for an office pool for the upcoming Super Bowl. Resident Agent in Charge Mark Giuffre and Diversion Group Supervisor James Portner investigated the accusations, and eventually reprimanded one employee.

Special Agent Reed testified that he reviewed all materials associated with Agoranos's notice of proposed removal, including those materials relating to Agoranos's claim that he had made whistleblower disclosures, and concluded that removal was warranted. Special Agent Reed also testified that he spoke with an attorney at the Chief Counsel's office during his investigation, and reviewed Agoranos's entire personnel file, even though it was not part of the proposed removal record. The DEA officially removed Agoranos on November 9, 2010.

## B.

Agoranos filed two separate challenges related to his removal. He first submitted a whistleblower complaint with the Office of Special Counsel ("OSC") on October 15, 2010. Agoranos alleged that his three whistleblower disclosures led to eight personnel actions: (1) October 2006 reassignment to a different supervisor; (2) June 2007 recommendation that Agoranos receive a psychological evaluation; (3) July 2007 through June 2009 failure to select Agoranos for thirty-one open Intelligence Research Specialist positions; (4) 2007 and 2008 assignment of unacceptable performance ratings; (5) 2008 denial of within-grade pay increase; (6) February 2009 placement

on a PIP; (7) January 2010 issuance of a notice of proposed removal; and (8) November 2010 removal.

OSC reviewed Agoranos's complaint, but concluded that there were no reasonable grounds to find that the DEA took any action due to a prohibited personnel practice. OSC found that, for the March 2004 disclosure, there was no significant adverse action close in time to the disclosure, and for the May 2005 disclosure, Agoranos had no firsthand evidence that the employees at issue had taken any impermissible actions. For the February 2007 disclosure, OSC found that coworkers made hostile comments to Agoranos and ostracized him due to the disclosure, leading Agoranos to seek mental health treatment, but also found that he would be unlikely to be successful in alleging retaliatory action under 5 U.S.C. § 2302(b)(8) because he could not prove that the disclosure was a contributing factor in subsequent adverse personnel actions. Because OSC declined to further investigate his complaint, Agoranos filed an IRA appeal requesting corrective action with the Board on April 8, 2011.

On November 29, 2010, Agoranos separately appealed to the Board, challenging his removal under Chapter 43 of Title 5 of the United States Code. An administrative judge ("AJ") consolidated Agoranos's separate appeals by dismissing the Chapter 43 removal action, and reviewing the propriety of his removal as part of his IRA request for corrective action. *Agoranos v. Dep't of Justice*, No. CH-0432-11-0182-I-1, 2011 MSPB LEXIS 3259 (M.S.P.B. May 23, 2011). By dismissing the Chapter 43 removal action, the AJ also declined to hear Agoranos's due process and procedural error affirmative defenses to his removal. The AJ then denied Agoranos's appeal on the merits in an initial decision issued on March 1, 2012. *Agoranos v. Dep't of Justice*, No. CH-1221-11-0466-W-1, 2012 MSPB LEXIS 1123 (M.S.P.B. March 1, 2012) ("*Initial AJ Decision*").

The AJ first determined that Agoranos failed to prove by preponderant evidence that he made qualifying disclosures, in March 2004 regarding the baby-betting pool, or in May 2005, regarding the private construction contract work. *Id.* at \*3–6. For the February 2007 Super Bowl betting pool disclosure, the AJ found that Agoranos proved by preponderant evidence that he made a viable whistleblowing disclosure. *Id.* at \*7–8. The AJ concluded, however, that Agoranos failed to prove that the Super Bowl disclosure was a contributing factor in the 2006 reassignment under the "knowledge/timing test." *Id.* at \*8–9 (citing *Carey v. Dep't of Veterans Affairs,* 93 M.S.P.R. 676, 681 (2003)). For the 2007 recommendation that Agoranos receive a psychological examination, the AJ concluded that Agoranos had established that the disclosure was a contributing factor, but "[t]he appellant lost no pay or benefits as a result of the personnel action, and effective relief cannot be granted to return the appellant to the status quo ante." *Id.* at \*9–10.

As for the other, "performance-related" personnel actions, the AJ found the requirements of the knowledge/timing test were satisfied because the actions "occurred within a relatively short time after the appellant's Super Bowl betting disclosure" and all officials, with the exception of Quinlan, knew of the disclosure. *Id.* at \*10–16. Though he concluded that Agoranos had met his burden to prove his 2007 disclosure was a contributing factor to those performance-related actions, the AJ found that the agency had shown "by clear or convincing evidence that it would have taken the personnel actions notwithstanding the appellant's disclosure." *Id.* at \*16–22. The AJ concluded that there was extensive evidence demonstrating Agoranos's unacceptable performance, the 2007 disclosure presented no motive for retaliation, and the agency took similar actions against similarly-situated employees. *Id.* at \*17–19. The AJ thus denied Agoranos's request for corrective action.

Agoranos filed a petition for review with the Board, and the Board affirmed-in-part and vacated-in-part the initial decision. *Agoranos v. Dep't of Justice*, 119 M.S.P.R. 498 (2013) ("*Initial Board Decision*"). As an initial matter, the Board reviewed the AJ's decision to: (1) dismiss the removal action, (2) hear the challenge to the removal action as part of the IRA request for corrective action, and (3) decline to hear Agoranos's affirmative defenses to removal of denial of due process and harmful procedural error. *Id.* at ¶¶13–18. The Board concluded that the DEA removed Agoranos without notifying him of the effect of his election to pursue corrective action with the OSC rather than to pursue a direct appeal to the Board. *Id.* at ¶17. Because Agoranos's filing of his OSC complaint "did not constitute a valid, informed election," the Board found that Agoranos could still assert his denial of due process and harmful procedural error defenses to his removal. *Id.* The Board, accordingly, reopened Agoranos's removal appeal for further adjudication by the AJ. *Id.*

The Board then analyzed the merits of the AJ's findings regarding Agoranos's protected disclosure. First, the Board concluded that Agoranos failed to provide a reasoned basis to disturb the AJ's findings regarding the alleged 2004 and 2005 disclosures. *Id.* at ¶19. The Board then affirmed the AJ's contributing factor conclusion for the performance-related actions, but vacated the AJ's conclusions regarding the lateral transfer requests. *Id.* at ¶¶20–26. In particular, the Board agreed that, though some of the performance-related actions were taken more than two years after the Super Bowl disclosure, the "performance-based actions . . . form one continuous chain . . . or in other words a continuum." *Id.* at ¶¶22–23. With regards to the lateral transfers, the Board remanded, directing the AJ to "look beyond the knowledge-timing test" to determine if there was any taint on those decisions caused by the Super Bowl disclosure even though the transferring official testified that he was unaware of

any disclosures by Agoranos. *Id.* at ¶¶24–25. Finally, the Board directed the AJ to reconsider his analysis of the agency's burden to show that it would have taken the same actions against Agoranos absent the protected disclosure. Based on our decision in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), the Board concluded that the AJ had failed to properly consider the countervailing evidence presented by Agoranos. *Id.* at ¶¶27–33.

On remand, the AJ affirmed the agency's removal action and again denied Agoranos's request for corrective action. *Agoranos v. Dep't of Justice*, No. CH-1221-11-0466-W-1, 2013 MSPB LEXIS 5091 (M.S.P.B. Sept. 23, 2013) ("*Remand Decision*"). In reviewing the DEA's removal action, the AJ first determined that the agency met its initial burden to show by substantial evidence that the agency used valid performance standards to analyze Agoranos's work. *Id.* at *3–4. The AJ concluded that the agency's allegations of unacceptable performance were sufficiently supported by both testimonial and documentary evidence, and that "a reasonable person might conclude the appellant was afforded a reasonable opportunity to improve his performance to an acceptable level." *Id.* at *12–14. The AJ then analyzed Agoranos's affirmative defenses that the DEA violated his due process rights and committed procedural errors by using Special Agent Reed as the deciding official in his removal proceeding. *Id.* at *14–19. Agoranos claimed that Special Agent Reed impermissibly participated in prior investigations relating to this case, that Special Agent Reed engaged in *ex parte* conversations with an employee at the Office of Chief Counsel regarding this case, and that Special Agent Reed secretly reviewed Agoranos's personnel file. *Id.* at *14. The AJ concluded that there was no due process violation caused by these *ex parte* communications because Special Agent Reed did not consider any new or material evidence that would have prejudiced his

decision-making. *Id.* at *14–18. As for the claim of harmful procedural error, the AJ found nothing in the *ex parte* communications that led Special Agent Reed to reach a different conclusion than he would have reached in the absence of the communications. *Id.* at *18–19.

The AJ then reviewed the request for corrective action under the WPA. The AJ adopted all of the findings and determinations from the *Initial AJ Decision* that had been affirmed by the Board. *Id.* at *20. For the contributing factor analysis of the lateral transfer requests, the AJ reviewed the "totality of circumstances" and concluded that, even though O'Dea provided information to the deciding official, O'Dea's disclosures did not taint the transfer request process because, according to the deciding official, only employees with superior performance ratings typically receive the requested transfers. *Id.* at *21–23. Agoranos's history of substandard performance ratings thus made his selection highly unlikely. *Id.* The AJ then reanalyzed, under *Whitmore*, if the agency had shown by clear and convincing evidence that it would have taken the same actions against Agoranos absent the protected disclosure. *Id.* at *24–34. Explicitly applying the factors identified by our court in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999), the AJ again concluded that "[t]here is overwhelming evidence, consisting of documents and testimony, that supports the agency's determination [that] the appellant was not performing at an acceptable level." *Id.* at *30. The AJ also found that the agency's action was consistent with its treatment of another, similarly-situated employee who had not made a protected disclosure, even though that employee resigned before the agency could remove her. *Id.* at *32–33. And finally, the AJ found there was little motive for the agency to retaliate, as the disclosure at issue was "relatively minor." *Id.* at *33.

Agoranos again sought review by the Board. *Agoranos v. Dep't of Justice*, 121 M.S.P.R. 382 (2014) ("*Final*

*Board Decision*"). Agoranos did not appeal the AJ's findings that the agency proved its performance standards were valid and that the agency gave Agoranos a reasonable opportunity to improve; and, regardless, the Board found sufficient evidence supporting the AJ's decision on these matters. *Id.* at 382 n.3. The Board then gave significant weight to the AJ's review of the evidence regarding the impact of the *ex parte* communications on Special Agent Reed's ability to make an impartial decision, and found no error in the AJ's finding that there was no due process violation. *Id.* at 382. The Board also concluded that Agoranos failed to meet his burden of showing that any of the *ex parte* communications introduced "new and material evidence" or provided "undue pressure" on Special Agent Reed. *Id.* Finally, the Board determined that the AJ appropriately considered all facts and properly applied the law in denying the request for corrective action. *Id.*

Agoranos timely appealed to this Court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our review of the Board's decisions is limited by statute. 5 U.S.C. § 7703(c). We only set aside the Board's actions, findings, or conclusions that are:

(1)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2)  obtained without procedures required by law, rule, or regulation having been followed; or

(3)  unsupported by substantial evidence . . . .

*Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (citation and internal quotation marks omitted).

The WPA prevents agencies from taking adverse personnel actions against employees in response to protected disclosures made by the employees. The Act states, in relevant part, that:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) any violation (other than a violation of this section) of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

5 U.S.C. § 2302(b)(8)(A).

The agency must first prove, by a preponderance of the evidence, its case for the employee's removal. *Whitmore*, 680 F.3d at 1367 (citing 5 C.F.R. § 1201.56). The burden then shifts to the employee to prove by a preponderance of the evidence that he or she made a protected disclosure, as described in 5 U.S.C. § 2302(b)(8)(A), that after the disclosure he or she was

subject to an adverse personnel action, and that the protected disclosure was a "contributing factor" to the adverse personnel action. *Id.*; *see also* 5 U.S.C. § 1221(e)(1). If the employee meets his or her burden regarding the protected disclosure, the agency can then attempt to rebut the employee's claim by presenting clear and convincing evidence "that it would have taken the same personnel action even in the absence of [the protected] disclosure." 5 U.S.C. § 1221(e)(2).

In assessing whether the agency has shown by clear and convincing evidence "that it would have taken the same personnel action even in the absence of [the protected] disclosure," we have highlighted three non-exclusive factors as particularly relevant: (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency takes similar actions against employees who are not whistle-blowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323. In *Whitmore*, we elaborated on the so-called *Carr* factors, stating that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." 680 F.3d at 1368. Thus, the Board must "provide an in depth review and full discussion of the facts to explain its reasoning," including consideration of countervailing evidence presented by the employee. *Id.* at 1368, 1371.

When assessing a WPA challenge to a removal decision, the Board must also consider any due process or procedural challenges an employee asserts as affirmative defenses. In *Stone v. Federal Deposit Insurance Co.*, 179 F.3d 1368, 1376 (Fed. Cir. 1999), we held that "[t]he introduction of new and material information by means of *ex parte* communications to the deciding official under-

mines the public employee's constitutional due process guarantee of notice . . . and the opportunity to respond." There is, however, no due process violation unless the deciding official "considers new and material information" due to the *ex parte* communication. *Id.* at 1377. Thus, the key inquiry is "whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.*; *see also Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1279–80 (Fed. Cir. 2011) (applying *Stone* to *ex parte* communications related to either a removal charge or a penalty determination). Factors relevant to determining if "new and useful information" is introduced through *ex parte* communications include: (1) "whether the *ex parte* communication introduces 'cumulative' information or new information; (2) whether the employee knew of the communication and had a chance to respond; and (3) whether the *ex parte* communication resulted in undue pressure upon the deciding official to rule in a particular manner." *Young v. Dep't of Hous. & Urban Dev.*, 706 F.3d 1372, 1376 (Fed. Cir. 2013) (citing *Stone*, 179 F.3d at 1377).

We have recognized that "a deciding official's having background knowledge of an employee's prior work history or performance record" "only raises due process or procedural concerns where that knowledge is the basis for the deciding official's determinations on . . . the merits of the underlying charge . . . ." *Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1354 (Fed. Cir. 2012).

## III.

### A.

Mirroring his arguments to the Board, Agoranos claims that Special Agent Reed's *ex parte* communications violated his procedural due process rights and constitute harmful error under 5 U.S.C. § 7701(c)(2). Agoranos argues that Special Agent Reed admitted that he had *ex*

*parte* communications with the DEA's counsel and reviewed materials not in the record or the notice of proposed removal, thus denying Agoranos the constitutionally-required notice necessary to properly respond to the claims against him. He argues, further, that the information Special Agent Reed received through these *ex parte* communications is not in the record, and should be considered "new and material evidence" because the DEA, and not Agoranos, prevented that information from being disclosed. Agoranos also states that, had he known that Special Agent Reed had in-depth prior involvement in investigations of Agoranos, he would have requested that Special Agent Reed be recused as the deciding official. And finally, with regards to both the affirmative defenses to his removal and the IRA request for corrective action, Agoranos argues that the AJ "ignored the facts, changed the facts, and ignored the law." In particular, Agoranos claims that his writing style remained the same from when he was hired in 2001 until his removal in 2010, but his work product only became inadequate after he made the protective disclosures.

In response, the government argues that substantial evidence in the record supports the DEA's decision to remove Agoranos and the AJ's finding that the DEA would have removed Agoranos regardless of the disclosure. According to the government, Agoranos failed two critical elements of his job duties as an Intelligence Research Specialist, despite the DEA's efforts to help him improve, thus justifying his removal. This evidence, it contends, sufficiently allows the agency to meet its burden to show that it would have removed Agoranos due to his subpar work product, regardless of his Super Bowl disclosure. The government also argues that the AJ appropriately applied the *Carr* factors—overwhelming evidence demonstrates a history of concern about Agoranos's work; the disclosure was considered to be relatively minor among supervisors, mitigating any motive to retaliate;

and the agency treated a similarly-situated, non-whistleblower employee the same as Agoranos. The government also contends that the AJ and the Board applied the correct law in determining that Special Agent Reed's *ex parte* communications neither reveal "new and material information" nor placed "undue pressure" on Special Agent Reed to reach a specific conclusion. And, finally, the government argues that the AJ did not commit harmful procedural error under 5 C.F.R. § 1201.56 as Agoranos failed to present any evidence demonstrating that the *ex parte* communications influenced Special Agent Reed's decision-making.

## B.

On appeal, Agoranos has not challenged the AJ's conclusions regarding the alleged 2004 disclosure, the alleged 2005 disclosure, or the DEA's showings that its performance standards were valid, and that it gave Agoranos a reasonable opportunity to improve. We, thus, only review Agoranos's affirmative defenses to his removal, and the Board's analysis of the Super Bowl disclosure under the burden-shifting framework of the WPA.

We agree with the government's arguments and do not find that the AJ's or the Board's decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." First,[1] with regards to the DEA's denial of Agoranos's thirty-one requests for transfer to open Intelli-

---

[1] The government does not challenge the Board's determination that Agoranos met his burden to show that his disclosure was a contributing factor to the performance-related actions. For his part, Agoranos does not challenge the Board's determination that Agoranos failed to establish that the recommendation that Agoranos receive a psychological evaluation caused remedial harm.

gence Research Specialist positions, the Board did not err in its analysis. Even though the deciding official for the transfer decisions had no direct knowledge of Agoranos's disclosures, the Board appropriately required the AJ to "look beyond the knowledge-timing test" to determine if any statements made by O'Dea to the deciding official could have tainted the decision-making process for the transfer requests. The AJ determined that such transfers were usually granted only to employees with superior performance ratings. Given Agoranos's documented history of average or substandard performance ratings, the AJ concluded that it would have been unlikely for Agoranos to receive those transfers regardless of his disclosures. Considering the depth of the AJ's analysis of the facts and appropriate application of the law, we find his decision to be supported by substantial evidence.

For the five performance-related personnel actions, we agree with the Board that substantial evidence supports the AJ's determination that the DEA would have taken these same personnel actions regardless of the Super Bowl disclosure. The AJ, on remand, performed an extensive analysis of Agoranos's work history, applying the *Carr* factors and considering all facts, including the countervailing evidence presented by Agoranos, as required by *Whitmore*. The AJ described the extensive documentary and testimonial evidence of Agoranos's subpar work performance and interpersonal communication skills, leading the AJ to conclude there was "overwhelming evidence" supporting the personnel actions. The AJ then appropriately identified that the disclosure was for a minor infraction that supervisors did not consider substantial. Although Agoranos's coworkers purportedly harassed and ostracized Agoranos because of the disclosure, and even though one person was reprimanded for the Super Bowl pool, the DEA presented unrebutted testimony that the supervisors did not consider the disclosure as something sufficiently serious to give rise to a

motive to retaliate. And, finally, the AJ correctly considered agency actions against similarly-situated employees. Agoranos argued that a similarly-situated employee was merely transferred, and not terminated, due to performance declines. The AJ, however, correctly found that that employee was not similarly situated—the employee had a long history of satisfactory performance with only a recent decline, and the transfer was made for the convenience of the employee's commute. The AJ did, however, point to a different employee with a similar history of unsatisfactory performance over an extended time who would have been removed by the agency if she had not resigned first. As the Board concluded, Agoranos has not shown any error in the AJ's analysis. Mere disagreements with the AJ's factfinding are insufficient. Agoranos urges us to reweigh the evidence presented to the Board and reach a different conclusion, but "re-weigh[ing] conflicting evidence . . . is not our function." *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Finally, we find that the AJ and the Board correctly rejected Agoranos's affirmative defenses based on Special Agent Reed's *ex parte* communications. Special Agent Reed's prior participation in investigations of Agoranos and his review of Agoranos's personnel file are troubling. But as we have previously stated, the mere knowledge of an employee's "work history or performance record" does not constitute harmful procedural error or a due process violation unless that knowledge influences the deciding official's determination. *See Norris*, 675 F.3d at 1354. Special Agent Reed testified that he "had no recollection" of any contact with Agoranos or his role in investigations of Agoranos. Special Agent Reed also stated that he reviewed Agoranos's personnel file "just to get a semblance of where Agoranos has been, what Agoranos's previous background [was]." He further testified that he spoke with an attorney at the Chief Counsel's office for only five minutes specifically to obtain "clarification"

about an issue in the case.  Special Agent Reed explained that he made the removal determination based entirely on the performance issues identified in the notice of proposed review.  The AJ found Special Agent Reed's testimony to be credible, and the AJ's credibility determinations are "virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).  Agoranos, who has the burden to prove his affirmative defenses, *Frey v. Department of Labor*, 359 F.3d 1355, 1361 (Fed. Cir. 2004), has thus failed to demonstrate that Special Agent Reed considered "new and material information" due to his *ex parte* communications "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to [such] a deprivation."  *Stone*, 179 F.3d at 1377.  And, similarly, we conclude that Agoranos has failed to prove harmful procedural error as he has not shown that Special Agent Reed's *ex parte* communications influenced his decision-making in any manner or led Special Agent Reed to reach a different conclusion than he would have reached in the absence of the *ex parte* communications.  *See* 5 C.F.R. § 1201.56(c)(3).

## IV.

Substantial evidence supports the AJ's and Board's determinations that the DEA proved, by clear and convincing evidence, that it would have taken the specified personnel actions against Agoranos even if Agoranos had not made the protected disclosure about the Super Bowl betting pool.  Substantial evidence also supports the AJ's and Board's conclusions that Agoranos failed to prove either a due process violation or harmful procedural error.  We therefore affirm the Board's decisions to uphold the personnel actions taken against Agoranos and deny his request for corrective action under the WPA.

**AFFIRMED**