# United States Court of Appeals for the Federal Circuit

———————————

**JEFFREY B. NORRIS,**
*Petitioner,*

v.

**SECURITIES AND EXCHANGE COMMISSION,**
*Respondent.*

———————————

2011-3129

———————————

Petition for review of an arbitrator's decision in case no. SEC-AR-09-005 by Daniel M. Winograd.

———————————

Decided: April 10, 2012

———————————

MICHAEL J. KATOR, Kator, Parks & Weiser, P.L.L.C., of Washington, DC, argued for petitioner. With him on the brief was ADAM J. CASNER, of Austin, Texas.

TARA K. HOGAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief was JUANITA C. HERNANDEZ, Senior Counsel, Securities & Exchange Commission, of Washington, DC.

---

Before DYK, MOORE, and O'MALLEY, *Circuit Judges*.

DYK, *Circuit Judge*.

Jeffrey B. Norris ("Norris") petitions for review of an arbitrator's decision affirming his removal from his position as a Trial Attorney with the Securities and Exchange Commission ("SEC"). *U.S. Sec. & Exch. Comm'n v. Nat'l Treasury Emps. Union Chapter 293*, No. SEC-AR-09-005 (Apr. 19, 2011) (Winograd, Arb.) ("*Arbitration Decision*"). Because we hold that the arbitrator erroneously failed to consider new evidence bearing upon the reasonableness of Norris's removal, we vacate and remand.

## BACKGROUND

Norris served as a Trial Attorney with the SEC from February 23, 1992, until he was removed on August 28, 2009. Before the events leading to his removal, discipline was initiated against Norris for exercising poor judgment and misuse of government email on two separate occasions. In 2007, Norris was suspended from service without pay for one day for exercising poor judgment in emailing an attorney who represented a witness in an ongoing SEC case, and expressing his opinion about the merits of the case. Thereafter, from March to May 2007, Norris exchanged a series of antagonistic emails from his SEC email account, and in which he identified himself as SEC trial counsel, with businessman Mark Cuban, owner of the Dallas Mavericks professional basketball team. Based on this exchange, Norris was suspended without pay for fourteen calendar days due to his misuse of government email.

The removal here was based on three additional emails sent in 2008. On September 11, 2008, Norris sent

an email to the Washington Post from his SEC email account in which he identified himself as Senior Trial Counsel and expressed certain political views. On October 19, 2008, Norris sent an email to two supervisors and three members of the support staff in which he demeaned the support staff and implied that they were incompetent at performing their job duties. Finally, on October 23, 2008, Norris emailed a confidential suspicious activity report ("SAR") to an appointed receiver and his counsel in violation of SEC policies.[1]

On May 22, 2009, the SEC sent Norris a notice of proposed removal which proposed to remove him based on the three emails sent in 2008, and recounted the prior emails which had led to the previous disciplinary actions against him. Norris responded, urging that his actions in connection with the 2008 emails were influenced by several personal circumstances, including his wife's becoming fully disabled, his daughter's suffering from Asperger's Disorder, and Norris's adult Attention Deficit Hyperactivity Disorder ("AD/HD"). On August 19, 2009, the deciding official, Rose Romero ("Romero"), informed Norris that she had decided to remove him effective August 28, 2009, for misuse of government equipment by sending unauthorized or inappropriate emails. In the decision, Romero stated that "because of [Norris's] continued inappropriate and/or unauthorized emails [she had] lost confidence that [he could] effectively perform [his] assigned duties." J.A. 118. Romero also noted that she

---

[1]   A SAR is a report filed by a financial institution with a federal law enforcement agency in which the institution discloses known or suspected violations of federal law or suspicious monetary transactions. Because a SAR may result in a criminal investigation, SARs and any information that would reveal the existence of a SAR are required to be kept strictly confidential. *See* 12 C.F.R. § 21.11.

had considered Norris's explanation that his behavior stemmed from his AD/HD and the effect of the medical conditions of his wife and daughter, but nevertheless concluded that Norris did "not have the potential for rehabilitation because prior disciplinary actions have not prevented [his] impulsive and improper e-mails." *Id.*

The union submitted Norris's removal to arbitration pursuant to the terms of the collective bargaining agreement with the SEC. A hearing was held before an arbitrator on November 18-19, 2010. There was no dispute that Norris had engaged in the behavior that led to his removal or that his actions constituted improper conduct. The focus was primarily on whether removal was a reasonable penalty. During the hearing, the arbitrator received testimony from six witnesses, including Romero and Norris. Although the incident was not mentioned in the notice of proposed removal, Romero testified in response to questioning from the agency's counsel that sometime before the termination proceeding, she had learned that Norris had a confrontation with agency commissioners in 2007 and that he was therefore barred from presenting cases to commissioners in the future.[2] Romero also testified that Norris's conduct in connection with this incident and the subsequent presentations bar had "a direct impact on how that attorney . . . is able to perform his duties." J.A. 139. In mitigation of the charges against him, Norris presented evidence that his personal circumstances had improved in early 2009, so that the improper conduct was unlikely to recur in the future. Norris testified that his daughter was placed in a special program to cater to her needs due to her Asper-

---

[2] During the hearing, Norris testified that he had never been barred from presenting cases to the commissioners and did not recall the confrontation that was alleged to have led to the bar.

ger's Disorder and had begun taking a new medication that caused her to show significant improvement, and that his wife's condition had also improved. Norris's psychiatrist testified that Norris began taking medication for his AD/HD in June of 2009, and also had begun attending adult AD/HD support groups. Norris's psychiatrist expressed his opinion that in the future, Norris was unlikely to send emails such as those that had formed the basis of his removal, due in part to his treatment and also to the fact that his primary "stressors" (the medical conditions of his wife and daughter) had been alleviated.

On April 19, 2011, the arbitrator issued a decision affirming Norris's removal and concluding that "Romero did not abuse her discretion as a manager in making the decision to remove [Norris] from the service." *Arbitration Decision*, slip op. at 59. In reaching this conclusion, the arbitrator considered each of the twelve "*Douglas* factors" to assess whether Norris's removal was an appropriate penalty. *See Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 331-32 (1981) (setting forth the factors relevant in determining the appropriateness of a penalty). In considering "the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties" (*Douglas* factor 5), *id.* at 332, the arbitrator concluded that this factor was "neutral," *Arbitration Decision*, slip op. at 52. The arbitrator relied on Romero's testimony that Norris's aggressive behavior had caused him to be barred from presenting cases to commissioners and that she had lost confidence in Norris's ability to maintain confidential information or good working relationships with other staff members. *Id.*

In assessing the "potential for the employee's rehabilitation" (*Douglas* factor 10), *Douglas*, 5 M.S.P.B. at 332, the arbitrator noted that this factor was one of "the most

difficult considerations," *Arbitration Decision*, slip op. at 55. The arbitrator stated that "[i]f sympathy were the sole deciding factor in this case, the arbitrator would conclude that grievant should be reinstated to his former position." *Id.* at 57. The arbitrator also recounted that Norris's psychiatrist had testified that Norris's course of treatment had "improved [Norris's] impulse control" and would "prevent[] further transgressions," and noted that the medical conditions of Norris's wife and daughter had improved, alleviating much of the stress from which he had previously suffered. *Id.* at 56-57. Nonetheless, the arbitrator found that "[t]he issue before the arbitrator is . . . whether Romero's decision, based upon the facts and circumstances *known to her at the time*, was within 'tolerable limits of reasonableness,'" and thus declined to consider these post-removal events in rendering a decision. *Id.* at 57-58 & n.17 (emphasis added).

Norris timely appealed to this court. We have jurisdiction pursuant to 5 U.S.C. §§ 7121(f) and 7703.

## DISCUSSION

Under 5 U.S.C. § 7121(f), we review a decision by an arbitrator "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board"; and our review of Merit Systems Protection Board ("Board") decisions is limited. We may only set aside agency actions, findings, or conclusions that we find to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1218 (Fed. Cir. 2011). We review questions of law *de novo*.

*Chambers v. Dep't of the Interior*, 602 F.3d 1370, 1375 (Fed. Cir. 2010).

I

Relying on this court's recent decision in *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011), Norris first argues that both Romero and the arbitrator improperly considered ex parte information that Norris had engaged in a confrontation that led to his being barred from presenting cases before the commissioners. This alleged confrontation and resulting bar had not been included in Norris's notice of proposed removal.

The pertinent regulation provides that "[i]n arriving at its decision, the agency will consider only the reasons specified in the notice of proposed action and any answer of the employee or his or her representative, or both, made to a designated official . . . ." 5 C.F.R. § 752.404(g)(1). In *Ward*, we held that "[e]x parte communications that introduce 'new and material information,' whether material to the merits of the underlying charge or material to the penalty to be imposed, violate due process," and explained that consideration of ex parte communications is a procedural error in violation of section 752.404. 634 F.3d at 1280-81. *Ward* involved a postal worker who had been removed from the federal service. Ward's notice of proposed removal informed him that the basis for his removal was a single, isolated incident in which Ward had engaged in improper conduct towards his supervisor. *Id.* at 1276. Ward appealed his removal to the Board. At the hearing before the Board, the deciding official testified that he had considered not only the incident that was the subject of the notice of proposed removal, but also prior incidents that had been relayed to him by other supervisors in which Ward had acted in a similarly inappropriate manner. *Id.* In par-

ticular, the deciding official specifically "admitted that Ward's 'recurring pattern of behavior' affected his analysis of two *Douglas* factors, lowering the Deciding Official's confidence in Ward's ability to satisfactorily perform his duties and convincing the Deciding Official that Ward showed no potential for rehabilitation." *Id.* We held that "[a]t worst, the Deciding Official's ex parte communications violated Ward's due process rights" and "[a]t a minimum, the Deciding Official's consideration of alleged past misconduct that was not included in the Notice of Proposed Removal violated Agency procedure." *Id.* at 1278. Thus, we remanded Ward's case to the Board to "analyze whether the Deciding Official's ex parte communications violated Ward's due process rights by introducing new and material information"; and if not, "whether the Agency's procedural error, considering Ward's alleged prior misconduct that was not included in his Notice of Proposed Removal, was harmful error." *Id.* at 1282-83; *see also Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) ("The introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond.").

Norris argues that his case is analogous to *Ward* because Romero, the deciding official, admitted during the arbitration hearing that she had been aware of prior conduct (Norris's alleged confrontation with commissioners and resulting bar) that had not been included in the notice of proposed removal and that this prior conduct contributed to her conclusion that she had lost confidence in Norris's ability to perform his assigned duties (*Douglas* factor 5).

As Norris's counsel conceded at oral argument, a deciding official's mere knowledge of prior misconduct by the employee obtained before the commencement of disciplinary proceedings does not constitute an improper ex parte communication. *See* Oral Argument at 1:55-2:33, *Norris v. Sec. & Exch. Comm'n*, No. 2011-3129 (Fed. Cir. Feb. 10, 2012), *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-3129/all. There is nothing inherently wrong with a deciding official's having background knowledge of an employee's prior work history or performance record. Nothing in the regulations limits the deciding official to being a neutral arbiter or requires that the deciding official be unfamiliar with the individual, the facts of the case, or the employee's prior conduct. A deciding official's knowledge of an employee's background only raises due process or procedural concerns where that knowledge is a basis for the deciding official's determinations on either the merits of the underlying charge or the penalty to be imposed. *See Ward*, 634 F.3d at 1280.

Here, viewing the record as a whole, it is clear that Romero testified only to her *knowledge* of the prior incident. She did not, as Norris contends, testify that this incident played any role in her decision to impose removal. She simply testified that this conduct has an impact on how an attorney is able to perform his duties.[3]

---

[3] During the arbitration hearing, Romero was called as a rebuttal witness for the agency and testified as follows regarding Norris's alleged confrontation with commissioners in 2007:

Q:  And his conduct would be described as what?
A:  Confrontational to the commissioners.
Q:  Okay. Now, would that bar and – and that conduct be something that would be something that you would want to see in a trial attorney?

She also testified that, in deciding to remove Norris, she had not considered information that had not been included in the notice of proposed removal. Thus, unlike *Ward* where the deciding official explicitly admitted to considering information not included in the notice of proposed removal in weighing two of the *Douglas* factors, here Romero never indicated that her knowledge of Norris's prior misconduct had influenced her consideration of the *Douglas* factors or weighed on her ultimate decision to remove Norris. We conclude that there is no evidence that Romero improperly considered ex parte information in determining the penalty to be imposed.

Norris also contends that the arbitrator erred in relying on the ex parte information concerning the alleged confrontation with commissioners introduced through Romero's testimony in sustaining Norris's removal. In weighing the effect of the offense on the employee's ability to perform his job and on his supervisors' confidence in the employee's abilities (*Douglas* factor 5), the arbitrator relied on the fact that "[Norris's] aggressive approach and attitude . . . had resulted in an order by the Commission that [Norris] would not be allowed to orally present case summaries to the Commission." *Arbitration Decision*, slip op. at 52. However, the arbitrator also considered other evidence in weighing *Douglas* factor 5. In addition to the allegation that Norris had been barred from presenting cases to the commissioners, the arbitrator also relied on testimony by Romero and another supervisor that they had lost confidence in Norris's ability to maintain confidential information and to have good working relation-

---

    A: Well, I think it has a direct impact on how that attorney performs his – is able to perform his duties.

J.A. 139.

ships with other members of the workforce based upon conduct that had been included in the notice of proposed removal. The arbitrator then weighed this adverse evidence against Romero's favorable testimony that Norris had continued to be an effective litigator throughout his term of employment, to determine that *Douglas* factor 5 was a "neutral" factor in assessing an appropriate penalty.

It is far from clear that the arbitrator's consideration of Norris's 2007 conduct played a significant role in the arbitrator's decision to sustain Norris's removal; the arbitrator's consideration of the conduct, while improper, may well have been harmless error. In light of the remand based upon the procedural error discussed below, we need not decide whether the arbitrator's error was harmless error. However, on the remand the arbitrator should not consider information not included in the notice of proposed removal in assessing whether the removal was reasonable.

## II

Norris next argues that the arbitrator erroneously failed to consider post-removal evidence presented at the hearing regarding Norris's AD/HD treatment, the improved medical conditions of his wife and daughter, and Norris's psychiatrist's conclusion that the improper conduct was unlikely to be repeated. In response, the government contends that allowing the arbitrator to consider this post-removal evidence would require the arbitrator to substitute his judgment for that of the agency. We address whether the arbitrator was obligated to consider new, post-removal evidence in mitigation of the penalty that was not before the deciding official.

Arbitrators, like the Board, must review *de novo* the merits of an agency's decision to take adverse action

against an employee; i.e., the Board determines *de novo* the underlying facts of the case such as whether the employee engaged in the alleged misconduct and whether the agency exceeded its authority in determining that the employee's misconduct would adversely affect the efficiency of the service. *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993); *see Doe v. Dep't of Justice*, 565 F.3d 1375, 1382 (Fed. Cir. 2009); *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1329 (Fed. Cir. 1985). The requirement of *de novo* review stems from the mandate that "the decision of the agency shall be sustained . . . only if the agency's decision . . . is supported by a preponderance of the evidence." 5 U.S.C. § 7701(c)(1); *see also Jackson*, 768 F.2d at 1329. Thus in *Brook*, we held that because the proceeding on the merits is *de novo*, "all evidence obtained up to the time of hearing is admissible." 999 F.2d at 528. Accordingly, we "must review the agency action based on the record made to the [Board] and the [Board] findings, rather than review the agency action solely on the basis of the agency's record." *Jackson*, 768 F.2d at 1329 n.4.

The penalty question here involves a different standard of review from the merits determination; i.e., review is not *de novo*. The "determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency." *Brook*, 999 F.2d at 528 (quoting *Beard v. Gen. Servs. Admin.*, 801 F.2d 1318, 1322 (Fed. Cir. 1986)); *see also Lachance v. Devall*, 178 F.3d 1246, 1251-52 (Fed. Cir. 1999). "The Board's role in [assessing the penalty] is not to insist that the balance be struck precisely where the Board would choose to strike it if the Board were in the agency's shoes in the first instance." *Douglas*, 5 M.S.P.B. at 332. Rather, the Board's review "is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a

responsible balance within tolerable limits of reasonable-ness." *Id.*; *see also Lachance*, 178 F.3d at 1256-57.

Since the Board's review is designed to determine whether the agency's action was reasonable, it can be argued that such a determination limits the Board's review to the evidence before the agency at the time of its decision. After all, a court's review of agency action to determine whether it was arbitrary and capricious is typically limited to review of the agency record.[4] But we think that the Board's function is different from that of a reviewing court. Under 5 U.S.C. § 7701(c)(1), Congress required that the Board develop a new record. The Board must review the agency's action based on the new record. § 7701(c)(1). In enacting this provision, Congress clearly contemplated that the new record would extend to all aspects of the case. "The Committee amended [§§ 7701(b)-(c)] to make it absolutely clear that an employee would receive a *full evidentiary hearing* in any case where there is a dispute as to any genuine and material issue of fact . . . ." S. Rep. No. 95-969, at 53-54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2775-76 (emphasis added); *see also* H.R. Rep. No. 95-1717, at 137 (1978) (Conf. Rep.), *reprinted in* 1978 U.S.C.C.A.N. 2860, 2871

---

[4]    *See, e.g.*, *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 555 (1978) ("[T]he role of a court in reviewing the sufficiency of an agency's consideration of environmental factors is a limited one, limited both by the *time at which the decision was made* and by the statute mandating review." (emphasis added)); *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1316 (Fed. Cir. 2004) ("[I]f litigants could demand rehearing as a matter of law because of new circumstances, new trends or new facts, 'there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.'" (quoting *Vt. Yankee*, 435 U.S. at 554-55)).

("[T]he employee is entitled to a hearing on appeal to the Merit Systems Protection Board."). Given the Board's duty to conduct an independent assessment of the *Douglas* factors to determine the reasonableness of the penalty, *see Douglas*, 5 M.S.P.B. at 332-33, we see no reason to distinguish between requiring the Board to consider new evidence relating to the agency's decision on the merits of the underlying misconduct and requiring the Board to consider new evidence regarding the reasonableness of the penalty imposed. Thus, we think new evidence, even on the question of penalty, should be considered by the Board (subject to the employee's right to notice of the basis for the removal described above).

The Board has consistently recognized its obligation to consider new evidence affecting the penalty determination in weighing the *Douglas* factors.[5] And in *Malloy v.*

---

[5] *See, e.g.*, *Sherlock v. Gen. Servs. Admin.*, 103 M.S.P.R. 352, 355, 357 (2006) (acknowledging that "the Board may consider an appellant's medical condition in determining the appropriate penalty" even where the evidence of the condition was presented for the first time before the Board); *Singletary v. Dep't of the Air Force*, 94 M.S.P.R. 553, 560 (2003) ("Although the Board has found that an appellant's failure to bring a mitigating factor to an agency's attention does not prohibit an AJ from considering that factor, the Board has noted that such failure merely affects the weight of the factor."); *Frye v. Dep't of the Army*, 63 M.S.P.R. 242, 246 (1994) (according "significant probative weight" to a medical report received post-removal where the report reflected treatment over a substantial period of time); *Tactay v. Dep't of the Navy*, 30 M.S.P.R. 363, 367-68 (1986) (considering a removed employee's successful post-removal completion of a rehabilitation program and determining that the employee's removal "exceed[ed] the bounds of reasonableness"); *Bryant v. Gen. Servs. Admin.*, 23 M.S.P.R. 425, 427 (1984) ("The failure to bring mitigating factors to the agency's attention merely affects the weight attached to them.");

*United States Postal Service*, 578 F.3d 1351 (Fed. Cir. 2009), we impliedly decided this very question. *Malloy* involved a United States Postal Service ("USPS") worker who had been removed from service due to a series of inappropriate exchanges with her supervisor. *Id.* at 1354. The USPS issued Malloy a notice of proposed removal on August 29, 2006; and she was ultimately removed effective October 6, 2006. *Id.* Malloy appealed her removal to the Board. At the hearing before the Board, Malloy submitted extensive medical evidence, including, *inter alia*, a post-removal report dated December 5, 2006, from Malloy's physician who had treated her for severe recurrent major depression from September 26, 2006, to December 16, 2006. *Id.* at 1355. The report specifically linked Malloy's inappropriate behavior to her medical condition. *Id.* In sustaining Malloy's removal, the Board failed to explicitly address the medical evidence submitted by Malloy, though it noted that it had "reviewed her submissions." *Id.* at 1356. We held that "when mental impairment or illness is reasonably substantiated, and is shown to be related to the ground of removal, this must be taken into account when taking an adverse action against the employee." *Id.* Thus, although the Board stated that all of the relevant *Douglas* factors had been considered, because the Board failed to explicitly analyze Malloy's medical evidence, we remanded the case for consideration of Malloy's evidence (including the post-removal report) and "reapplication of the *Douglas* factors in light of this evidence." *Id.* at 1357.

---

*Hall v. Dep't of the Air Force*, 8 M.S.P.R. 347, 355 (1981) ("[W]e are not limited to the record before the agency and will consider all relevant factors of record."), *aff'd in part, rev'd in part on other grounds*, 698 F.2d 1230 (9th Cir. 1983).

Under *Malloy*, the Board is tasked with independently assessing the relevant *Douglas* factors to determine whether the penalty imposed was reasonable. *See also Lachance*, 178 F.3d at 1257 ("That the Board always should have independent balancing authority seems manifest in view of the Reform Act's purpose in creating the Board to determin[e] whether [the civil service] system is free from abuse." (alterations in original) (internal quotation marks omitted)). Thus, we hold that where new evidence in mitigation of the penalty imposed is presented to the Board (or the arbitrator), the evidence must be considered in determining whether the agency's imposed penalty was reasonable.

In this case, the arbitrator erred in holding that "post-removal . . . good conduct is not relevant to the issue before the arbitrator." *Arbitration Decision*, slip op. at 57 n.17. In assessing the reasonableness of the penalty imposed, the arbitrator was required to consider post-removal evidence that was brought to his attention. On remand, the arbitrator should consider the post-removal evidence submitted by Norris in evaluating the relevant *Douglas* factors. We express no opinion as to the weight to be given such mitigating evidence.

On remand, we leave to the arbitrator to determine whether, in light of all the evidence, the penalty of removal "did strike a responsible balance within tolerable limits of reasonableness." *Douglas*, 5 M.S.P.B. at 333.

## CONCLUSION

For the foregoing reasons, the arbitrator's decision affirming Norris's removal is vacated and the matter is remanded for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

## Costs

Costs to appellant.