NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KYEN M. HILL,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2024-1695

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-18-0361-I-1.

---

Decided:  April 7, 2026

---

DAVID BRANCH, Law Office of David A. Branch, Washington, DC, argued for petitioner.

JOSHUA DAVID TULLY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE, LIRIDONA SINANI.

---

Before DYK, SCHALL, and PROST, *Circuit Judges.*

SCHALL, *Circuit Judge.*

### DECISION

Kyen M. Hill petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained the action of the Department of Defense ("Agency") that removed Mr. Hill from his position of Police Officer, AD-0083-07 at the Pentagon Force Protection Agency ("PFPA") in Arlington, Virginia. *Hill v. Dep't of Def.*, No. DC-0752-18-0361-I-1, (Nov. 16, 2018), J.A. 1–46.[1] For the reasons stated below, we *affirm.*

### DISCUSSION

### I

The sequence of events pertinent to Mr. Hill's challenge to his removal began on December 25, 2015. At that time, the Agency asserted, Mr. Hill made a racially insensitive remark to a coworker, Officer Sidney Smith. J.A. 3–4. After a third officer reported the remark, the Agency proposed that Mr. Hill be suspended from his job for five days based on the charge of "conduct unbecoming of a police officer." J.A. 3, 16.

While the proposed suspension was under consideration, Mr. Hill presented to PFPA's Deputy Chief, Major

---

[1]    The November 16, 2018 initial decision of the administrative judge ("AJ") became the final decision of the Board on February 13, 2024, pursuant to 5 C.F.R. § 1200.3(b), because the Board did not have a quorum to consider Mr. Hill's petition for review of the initial decision. J.A. 409. Accordingly, all citations herein to the decision of the Board are to the AJ's initial decision.

William Lagasse, a sworn statement that Mr. Hill said was given to him by Officer Smith. In the statement, Officer Smith purportedly stated that Mr. Hill had not made the remark that had led to the pending disciplinary action. J.A. 135. Subsequently, the Agency determined that Mr. Hill had forged the sworn statement that he presented to Major Lagasse. J.A. 14.

On December 28, 2016, Captain Johnathan Duckworth, Mr. Hill's supervisor, proposed that Mr. Hill be removed from his position. J.A. 2. The proposal was based on four charges. The first charge was Providing a False Statement. It was based upon the charge that Mr. Hill had forged the document he presented to Major Lagasse. J.A. 3. The second charge was Conduct Unbecoming a Police Officer. It was based upon the charge that Mr. Hill had made the racially insensitive remark to Officer Smith on December 25, 2015. J.A. 15. The third charge contained two specifications: *first*, that Mr. Hill was observed sleeping on duty on January 25, 2015, J.A. 17, and *second*, that he was found sleeping on duty on September 3, 2016, J.A. 24. Finally, in the fourth charge it was alleged that, during his shift from 6:00pm on January 24, 2015, through 6:30am on January 25, 2015, Mr. Hill had failed to complete his assigned duties. J.A. 26.

In a decision dated June 30, 2017, the deciding official, Major Ronald Wilkins, sustained Mr. Hill's removal. J.A. 2. Mr. Hill thereafter timely appealed to the Board.

On November 16, 2018, the AJ issued her initial decision. In it, she determined that the Agency had established each of the four charges against Mr. Hill by a preponderance of the evidence. *See* J.A. 3–27. She also determined that Mr. Hill had failed to establish that, as he alleged, during the removal process, the Agency had, in several instances, violated his right to due process. J.A. 35–42. Finally, the AJ found that the penalty of removal was

reasonable. J.A. 42–43. She therefore sustained the action of the Agency removing Mr. Hill from his position. J.A. 45.[2]

After the AJ's initial decision became the final decision of the Board, Mr. Hill timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II

We must set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703. On appeal, "[t]he petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## III

## A

Mr. Hill makes three arguments on appeal. First, he raises again the several violation-of-due-process claims related to *ex parte* communications that he asserted before the Board. *See* Appellant's Br. 13–34. Many of these communications fall under the category of routine communications about job performance, which under our decision in *Norris v. Securities Exchange Commission* do not raise due process concerns. 675 F.3d 1349, 1353–54 (Fed. Cir. 2012). The most significant of these due process concerns, he contends, arose from what he says were improper *ex parte* communications between Major Anthony Brisueno, PFPA Deputy Division Commander, and Major Wilkins, the

---

[2]   In her decision, the AJ also rejected Mr. Hill's claims of racial and disability discrimination. J.A. 27–34. Those matters are not before us on appeal.

deciding official for the removal action. The circumstances giving rise to this claim are as follows:

While the Agency's removal action was pending, Major Brisueno conveyed to Major Wilkins information concerning additional allegations against Mr. Hill. These allegations involved conduct involving Mr. Hill that was separate and apart from the four charges in the removal action and that took place after the removal action was commenced. *See* J.A. 38–39. Specifically, the AJ noted that Major Brisueno forwarded by email to multiple officers, including Major Wilkins, a complaint that Mr. Hill had engaged in aggressive behavior while on duty at another facility pending a decision on the removal action. J.A. 39. Major Brisueno wrote in the email: "It appears that Officer Hill's bad behavior has increased while in the work place [sic]. This is affecting Everyone who comes in contact with him or engaging government employees where ever [sic] he is located or working." J.A. 215. Major Brisueno continued, "I think it's time for us to consider [Mr. Hill] for admin[istrative] leave before his behavior [sic] and final decision is made for his removal." *Id.* When he was asked in a subsequent email why the decision on the removal action was "taking so long," Major Brisueno replied by email, "Major Wilkins will make this a priority case and give us updates on a daily basis of it[s] progression." *Id.*; J.A. 39. Major Wilkins was copied on all three of these emails. J.A. 215. In rejecting Mr. Hill's due process claim based upon these communications, the AJ stated that there was "no showing that [Major Wilkins] relied on that information in deciding the appellant's removal." J.A. 39–40. She further stated that it was "unreasonable to expect Major Wilkins would be cut off from any communication involving the appellant or that any such communication constituted a prohibited *ex parte* communication that influenced his decision to remove the appellant." J.A. 40.

Mr. Hill argues that the communications just described "inherently amount to violations of due process," citing our

decisions in *Stone v. Federal Deposit Insurance Corp.*, 179 F.3d 1368 (Fed. Cir. 1999), and *Federal Education Association-Stateside Region v. Department of Defense*, 841 F.3d 1362 (Fed. Cir. 2016) ("*Federal Education Association*"). Appellant's Br. 22; *see also id.* at 20–23. We do not agree.

We stated in *Stone* that "[t]he introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond." 179 F.3d at 1376. In *Stone*, the deciding official received *ex parte* memoranda urging that an employee be terminated. *Id.* at 1372–73. Because the employee had no opportunity to respond to the memoranda, we concluded that the employee's due process rights may have been undermined. *Id.* at 1377. We therefore remanded the case to the Board to determine whether the *ex parte* communications were "new and material." *Id.* We explained that, to determine whether information is "new and material" for due process purposes, the Board should consider the facts and circumstances of each case, weighing factors such as: (1) "whether the *ex parte* communication merely introduces 'cumulative' information or new information"; (2) "whether the employee knew of the error and had a chance to respond to it"; and (3) "whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.*

In its decision, the Board determined that Major Brisueno's correspondence to Major Wilkins was "about the *status* of a decision regarding the appellant's proposed removal," and was merely "suggest[ing] that perhaps the appellant should be placed on administrative leave pending a decision." J.A. 39 (emphasis added). In other words, the Board did not find the *ex parte* communications to be "of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *See Stone*, 179

F.3d at 1377. This finding is supported by substantial evidence in the form of the language used by Major Brisueno in the pertinent correspondence quoted above. We thus see no due process violation here. *See id.* at 1376–77 ("[N]ot every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding.").

Mr. Hill relies on *Federal Education Association* as supporting the proposition that "communications from a deciding official's supervisors to the deciding official suggesting a certain result on a pending discipline are 'a paradigmatic example of the type of communication likely to result in undue pressure' even if it does not 'direct, officially recommend, or even pressure an outcome.'" Appellant's Br. 20 (quoting *Federal Education Association*, 841 F.3d at 1368–69). Mr. Hill's reliance on *Federal Education Association* is misplaced since that decision was later vacated. *See Fed. Educ. Ass'n-Stateside Region v. Dep't of Defense*, 898 F.3d 1222 (Fed. Cir. 2018).[3] Moreover, here the Board

---

[3] The deciding official in *Federal Education Association* received *ex parte* correspondence from his supervisor stating that "we need to try and terminate" the employee "for repeated use of corporeal [sic] punishment and for insubordination." 841 F.3d at 1369. In the original panel decision, our court concluded that the employee's due process rights had been violated because the nature of this communication, particularly in light of the strong language used and the specificity of the rationale, "create[d] a high risk that a subordinate decision-maker would have been unduly pressured to terminate the employee," regardless of whether the deciding official believed he had actually been unduly influenced. *Id.* at 1369–70. After issuance of the panel decision, the Department of Defense filed a petition for rehearing. The en banc Court granted the petition for

did not conclude that the communications at issue "sug-gest[ed] a certain result" on Mr. Hill's pending disciplinary action. Instead, in this case the Board reasonably deter-mined that the language of the *ex parte* communications pertaining to Mr. Hill merely suggested that he be placed on administrative leave pending the outcome of a decision on his removal. J.A. 39.

Finally, as noted, on appeal Mr. Hill argues that the AJ erred in rejecting his additional violation-of-due-process claims. *See* Appellant's Br. 13–17, 23–32. We have consid-ered all of the arguments Mr. Hill makes in that regard and have found them not persuasive.

B

Mr. Hill's second argument on appeal is that he was improperly subjected to double punishment. Mr. Hill was placed on enforced sick leave after he was found asleep on shift on January 25, 2015. Mr. Hill argues that the en-forced leave was punishment he already received for the conduct alleged in Charges 3 and 4.

The AJ concluded that Mr. Hill was placed on sick leave for the purpose of evaluating his general fitness for his po-sition rather than as punishment for either falling asleep or failing to complete his assigned duties on January 25,

---

rehearing and vacated the panel decision. *Fed. Educ. Ass'n-Stateside Region v. Dep't of Def.*, 873 F.3d 903, 904 (Fed. Cir. 2017). Before deciding the case on the merits, the en banc Court discovered there was a question as to the timeliness of the filing of the petition for review. *Fed. Educ. Ass'n-Stateside Region*, 898 F.3d at 1223. The en banc court sent the case back to the panel, which dismissed the appeal as untimely. *Id.* at 1226. In any event, the facts of *Federal Education Association* are totally different from those here.

2015. J.A. 35–36; *see Nguyen v. Dep't of Homeland Sec.*, 737 F.3d 711, 716–17 (Fed. Cir. 2013). The AJ's conclusion is supported by substantial evidence including testimony from Captain Duckworth. Furthermore, Mr. Hill was determined to have been sleeping on duty on a different occasion, which would be sufficient to sustain Charge 3. *See Guise v. Dep't of Just.*, 330 F.3d 1376, 1380 (Fed. Cir. 2003) (citing *Lachance v. Merit Sys. Prot. Bd.*, 147 F.3d 1367, 1371 (Fed. Cir. 1998)).

C

Mr. Hill's third argument on appeal is that the AJ's finding that the Agency established Charge 1 (Providing a False Document) and Charge 2 (Conduct Unbecoming a Police Officer) is not supported by substantial evidence. This issue requires little discussion. Having considered the record, we conclude that the AJ's findings regarding Charges 1 and 2 are supported by substantial evidence in the form of documents and witness testimony. On the latter point, the AJ found the testimony of Agency officials credible and the testimony of Mr. Hill on significant matters not credible. Mr. Hill has given us no reason to disturb these credibility determinations, which are "virtually unreviewable." *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

CONCLUSION

For the foregoing reasons, we affirm the final decision of the Board sustaining Mr. Hill's removal from his position.

**AFFIRMED**

COSTS

No costs.