NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICHARD A. KOESTER,**
*Petitioner*

**v.**

**UNITED STATES PARK POLICE,**
*Respondent*

---

2017-2613

---

Petition for review of an arbitrator's decision in No. 16-53707-A by James M. Harkless.

---

Decided: January 3, 2019

---

JOHN SCOTT HAGOOD, JR., Hannon Law Group, Washington, DC, argued for petitioner.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM, JOSEPH H. HUNT.

---

Before WALLACH, CLEVENGER, and STOLL, *Circuit Judges.*

CLEVENGER, *Circuit Judge*.

A former police officer with the United States Park Police appeals from an arbitrator's decision upholding the Park Police's decision to remove him from the Federal Service. Because the arbitrator erred when he ignored certain evidence of alleged mitigating circumstances surrounding the incident that led to the officer's removal, we vacate and remand.

BACKGROUND

I

Richard Koester became an officer with the United States Park Police in 1996. He was assigned to patrol Liberty and Ellis Islands through the New York Field Office, which includes the Statue of Liberty – a popular tourist destination, national icon, and top terrorist target. Officers assigned to work at the Statue of Liberty may be the first and last line of defense against those who attempt to damage the landmark or injure others, which is why those officers are issued weapons, ammunition, and badges and their state of mind is considered of paramount importance.

Mr. Koester had a checkered history during his tenure with the Park Police. In 2001, he was arrested by his fellow officers and charged with several felony offenses. Although the charges were ultimately dismissed and Mr. Koester was ordered back to work, he took a significant period of leave from the Federal Service. He returned to the Park Police in February 2009 and was stationed in Washington, D.C., rather than New York. Thereafter, Mr. Koester asserts that he was bullied, mocked, and generally excluded by his fellow officers. His wife divorced him around that time and Mr. Koester, admittedly not responding well to the difficult life circumstances, started drinking. In July 2009, he made inappropriate radio transmissions off-duty after drinking, was placed on

light duty and charged by the Park Police for the inappropriate conduct. He ultimately served a two-day suspension for that transgression.

Mr. Koester requested to be transferred back to the New York Field Office, and that request was granted in January 2011. He was written up several times by the Park Police after he returned to New York, including for permitting a breach of security in July 2011, abandoning his post without leave to use the bathroom and print timesheets in December 2011, and watching television in his patrol car while on duty in March 2012.

Mr. Koester then experienced a traumatic event in October 2012. He and another officer reported for duty at the Statue of Liberty on the day that Hurricane Sandy struck New York City. The power went out in the building, they were trapped inside with water rising up to their chests, and they feared they might not survive. They were relieved when someone rescued them.

About one year later, from October 28–29, 2013, Mr. Koester served his last twelve-hour overnight shift with the Park Police. The morning before his shift, Mr. Koester's second wife had an interview with immigration officials to support her application for a green card. The interview did not go well, his wife was distraught, and Mr. Koester had trouble sleeping before his shift. Mr. Koester decided to go to work anyway, brought a half-pint bottle of vodka in his work bag, and consumed some of it during his shift. Video evidence and witness testimony demonstrates that he showed signs of intoxication while attempting to perform routine tasks.

After Mr. Koester made incoherent and concerning radio transmissions, a supervisor approached him and observed his inebriated state. Mr. Koester admitted he had been drinking but refused to take a breathalyzer test. His supervisor took his weapon, ammunition, and badge, suspended him, and drove him home. At that time, a

fellow officer called the Employee Assistance Program on Mr. Koester's behalf to get him help.

Mr. Koester was placed on administrative leave. During that time, he attended the maximum six sessions offered through the Employee Assistance Program, sought counseling from a psychologist, and attended various meetings directed at helping him overcome his drinking problem.

## II

In August 2014, the Park Police proposed removing Mr. Koester from the Federal Service for both consuming alcohol while on duty and being impaired while on duty due to alcohol consumption. The Acting Assistant Chief of the Park Police, Patrick Smith, sustained both charges and accepted the proposed penalty following an in-person interview with Mr. Koester. In assessing the appropriate penalty, Assistant Chief Smith relied on the twelve factors recited in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981), which guide an agency's penalty decision for employee misconduct. In doing so, he considered Mr. Koester's argument that removal was excessive in light of his great potential for rehabilitation, his marked progress in overcoming alcoholism, and evidence of mitigating circumstances. That mitigating evidence included unusual job tension stemming from the 2001 criminal accusations, his divorce from his first wife, and the immigration-related issues that were complicating his relationship with his second wife.

Assistant Chief Smith placed significant weight on the seriousness of drinking alcohol to the point of impairment while on duty as a law enforcement officer at one of the world's top terrorist targets. He also gave weight to the fact that Mr. Koester had previously been reprimanded for misconduct, including his two-day suspension in 2011 for inappropriate radio transmissions and his two-day suspension in 2014 for abandoning his post without

leave, and he appeared not to have learned from his earlier mistakes. Assistant Chief Smith said he did not believe Mr. Koester was a good candidate for rehabilitation because the seriousness of his misconduct seemed only to be escalating rather than regressing. Finally, he rejected Mr. Koester's mitigating evidence, including his treatment for alcoholism, because it did not "override the seriousness of [his] misconduct or restore . . . confidence that [he could] perform the duties of a police officer." J.A. 61.

Mr. Koester sought arbitration with respect to the agency's decision through the Fraternal Order of Police, United States Park Police Labor Committee ("Union"), and the arbitrator sustained both charges and affirmed the removal penalty. The Union argued that the agency failed to properly weigh the *Douglas* factors in determining the appropriate penalty and ignored his potential for rehabilitation. To aid its argument, it presented new evidence of mitigating circumstances that were not before the agency, including that he was mocked and bullied by his fellow officers, that he continued to suffer from the emotional toll of his Hurricane Sandy experience, and that he must be given a chance to demonstrate his improvement following his participation in the Employee Assistance Program. The arbitrator refused to consider the arguments stemming from that evidence in his analysis of the *Douglas* factors because the Union never gave the agency an opportunity to consider those potential mitigating circumstances. The arbitrator also said that the evidence relating to Mr. Koester's wife's poor immigration interview was not brought before the agency and thus refused to consider that evidence as well. Finally, the Union argued that it was error for the agency to consider Mr. Koester's charge for abandoning his post without leave in 2011 because he was not punished for that incident until 2014 after he was placed on administrative leave for on-duty intoxication. The arbitrator

agreed that the agency erred, but decided that the error was harmless given the severity of Mr. Koester's misconduct.

Mr. Koester now appeals. We have jurisdiction to decide his appeal pursuant to 5 U.S.C. § 7121(f) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review arbitration decisions "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f). We may thus only set aside agency actions, findings, or conclusions that we determine are: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* § 7703(c).

An agency's penalty for employee misconduct is within its sound discretion. *LaChance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). We defer to the agency's penalty determination unless it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Allen v. U.S. Postal Serv.*, 466 F.3d 1065, 1071 (Fed. Cir. 2006).

Mr. Koester does not challenge on appeal the charges for consuming alcohol while on duty and for being impaired while on duty due to alcohol consumption. He instead attacks the Park Police's removal penalty. Specifically, Mr. Koester makes four arguments aimed at reducing the penalty the Park Police assessed. First, he argues that the arbitrator abused his discretion when he failed to consider all the evidence of mitigating circumstances. Second, he contends that the arbitrator abused his discretion when he failed to independently assess and appropriately weigh the *Douglas* factors. Third, he asserts that

the arbitrator erred when he rejected the argument that the terms of the collective bargaining agreement between the Union and the Park Police required the agency to allow him to demonstrate improvement before removal. Last, he argues that the arbitrator erred when he treated the Park Police's reliance on his 2014 punishment for the absence without leave incident as harmless error. We address each of his arguments in turn.

I

Mr. Koester argues that the arbitrator abused his discretion when he ignored new evidence that was not presented to the agency because our case law requires arbitrators to consider all evidence when independently assessing the reasonableness of a penalty. Mr. Koester contends that the arbitrator did not consider his ability to demonstrate improvement after completing the Employee Assistance Program, the impact of Hurricane Sandy on his state of mind, the environment of mocking and bullying, and the effect of his wife's poor immigration interview. The Park Police responds that the arbitrator heard all the evidence, considered it, and simply afforded it less weight than Mr. Koester would desire.

Arbitrators cannot wholly disregard new evidence when assessing the reasonableness of an agency's penalty. In *Norris v. Securities & Exchange Commission*, the arbitrator ignored all the facts and circumstances that were not before the agency at the time of its decision. 675 F.3d 1349, 1352 (Fed. Cir. 2012). We held "that where new evidence in mitigation of the penalty imposed is presented . . . to the arbitrator[], the evidence must be considered in determining whether the agency's imposed penalty was reasonable." *Id.* at 1357. We reasoned that the arbitrator cannot ignore evidence bearing on the reasonableness of the penalty merely because it was not presented to the agency, given that the arbitrator is

required to assess independently the *Douglas* factors.  *Id.* at 1356.

In this case, the arbitrator abused his discretion when, during his independent assessment of the *Douglas* factors, he refused to consider evidence that he believed was never presented to the agency.  He gave no weight to Mr. Koester's ability to demonstrate improvement after completing the Employee Assistance Program, the impact of Hurricane Sandy, the unfriendly work environment, and the effect of Mr. Koester's wife's poor immigration interview because the Union did not refer to that evidence at the agency level in its response to the Park Police's proposed removal.  That rationale for disregarding evidence is clearly contrary to our decision in *Norris*.  *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) (indicating that taking an erroneous view of the law necessarily constitutes an abuse of discretion).  And the arbitrator's erroneous view of the law is not harmless.  He gave no alternative explanation for discounting some of that evidence even if it were in the mix, and we therefore cannot say without impermissibly reweighing the evidence ourselves whether that new body of evidence would alter the arbitrator's evaluation of the reasonableness of the agency's removal penalty.

## II

Mr. Koester challenges the arbitrator's *Douglas* factor analysis.  He argues that the arbitrator did not fulfill his duty to independently assess every *Douglas* factor to ensure that the Park Police's removal penalty is reasonable and did not appropriately weigh the evidence with respect to his potential for rehabilitation and the presence of mitigating circumstances.  Specifically, Mr. Koester contends that the Park Police and the arbitrator held his alcoholism against him by assuming he would relapse, that they failed to account for medical treatment he was receiving, that they ignored his expressions of remorse,

and that the arbitrator did not give sufficient consideration to the fact that he was a recovering alcoholic who demonstrated rehabilitative promise. He argues that the evidence, including the 2001 accusations, the hostile work environment, the traumatic Hurricane Sandy experience, and his wife's poor immigration interview, strongly supports a different conclusion.

The Park Police disagrees. It counters that the arbitrator properly and independently considered the relevant *Douglas* factors. It argues that the evidence supports concluding that Mr. Koester is a poor candidate for rehabilitation, that he has not learned from his previous mistakes despite his treatment, and that his remorse only came well after the time of the incident. Furthermore, the Park Police argues that the evidence Mr. Koester points to in support of a different conclusion is unhelpful because it is either too old and attenuated from the drinking incident or it is an inappropriate justification for consuming alcohol while on duty to the point of intoxication.

Mr. Koester's argument is unpersuasive. The arbitrator is not required to consider each and every *Douglas* factor, but only those that are relevant. *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1357 & n.2 (Fed. Cir. 2009). There is no reason to believe that the arbitrator failed to consider or independently assess any relevant *Douglas* factor. Moreover, the Park Police's removal penalty is not so harsh and grossly or unconsciously disproportionate to the offense that it amounts to an abuse of discretion for the arbitrator to have considered it reasonable. *See Webster v. Dep't of the Army*, 911 F.2d 679, 685–86 (Fed. Cir. 1990) (reciting the highly deferential standard under which we review penalties sustained by the Merit Systems Protection Board or an arbitrator). The arbitrator heard Mr. Koester's evidence that he was a recovering alcoholic who has received significant treatment, independently assessed the rehabilitative evidence, and

reasonably concluded that it did not outweigh the "extremely grave" nature of Mr. Koester's misconduct in light of his prior disciplinary record. J.A. 53. Although the arbitrator erred when he failed to consider certain evidence of potential mitigating circumstances, he did not abuse his discretion in his consideration of other evidence in the record. It was not arbitrary and capricious to discount the impact of the 2001 allegations as too remote in time or to discount other evidence as incredible.

## III

Mr. Koester contends that the arbitrator erred when he misconstrued the requirements of the collective bargaining agreement between the Union and the Park Police. He argues that, under the terms of that agreement, once the Park Police extended assistance toward rehabilitation through the Employee Assistance Program, it was required to allow him to demonstrate improvement before removal. The Park Police counters that the arbitrator interpreted the agreement correctly because it only requires the Park Police to provide access to the Employee Assistance Program, not repeated chances to demonstrate improvement following misconduct.

Mr. Koester's interpretation of the agreement lacks merit. The collective bargaining agreement states "[i]t is agreed that an Officer will be extended assistance toward rehabilitation through [the Employee Assistance Program]. However, it is understood that if the Officer is unable to improve his/her job performance to an acceptable level, appropriate action, not to preclude removal, may be taken." J.A. 67. Although the agreement requires the Park Police to maintain and provide access to the Employee Assistance Program, it nowhere requires the Park Police to give officers an opportunity to demonstrate improvement before removing them.

## IV

Mr. Koester's final argument is that the arbitrator erred when he treated as harmless the agency's impermissible consideration of his absence without leave charge as an aggravating factor. He states that the Park Police were not permitted to consider the absence without leave charge in its *Douglas* factor analysis because disciplinary action was not taken with respect to that misconduct until after he was placed on administrative leave for consuming alcohol while on duty to the point of inebriation. Because his previous misconduct played a critical role in the Park Police's removal decision, Mr. Koester argues that the arbitrator erred in treating the Park Police's reliance on the absence without leave charge as harmless.

The Park Police responds that it was permitted to rely on the absence without leave charge despite the lack of disciplinary action at the time of Mr. Koester's alcohol consumption and inebriation charges. It relies on *United States Postal Service v. Gregory*, 534 U.S. 1 (2001), for the proposition that an agency can use earlier disciplinary violations in a later disciplinary proceeding even if those earlier violations remain unresolved. Finally, the Park Police argues that, even if it did err, it was not arbitrary and capricious for the arbitrator to treat that error as harmless in light of the severity of Mr. Koester's misconduct.

We agree that the arbitrator's decision to treat any perceived error as harmless was not arbitrary and capricious. Even though the Supreme Court's decision in *Gregory* does not answer whether the Park Police erred in this case, because there the Court presumed some disciplinary action had been taken before the currently charged misconduct, albeit subject to later change, we need not decide whether the Park Police erred. *Id.* at 7–10. The arbitrator independently assessed the evidence and maintained that the removal penalty was justified in

light of the extreme nature of Mr. Koester's misconduct and other aggravating factors, such as his previous inappropriate radio transmission charge. We see no reason to disturb the arbitrator's discretionary conclusion that any perceived agency error was harmless.

## CONCLUSION

For the reasons stated above, we vacate the arbitrator's decision upholding as reasonable the Park Police's removal penalty and remand for further proceedings consistent with this Opinion. On remand, the arbitrator should independently assess the relevant *Douglas* factors taking into account all the evidence presented, including purported new evidence, now of record.

## VACATED AND REMANDED

### COSTS

No costs.